UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN BROWN,

        Plaintiff,

 – against –

JOHN DOE and THE CITY OF NEW YORK,

        Defendants.

**OPINION AND ORDER**

13 CIV. 8409 (ER)

Ramos, D.J.:

  *Pro se* plaintiff Sean Brown ("Plaintiff" or "Brown") brings this suit against John Doe and the City of New York ("Defendant" or "the City") pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was held in the Segregated Housing Unit ("SHU") for over fifteen months while in the custody of the New York City Department of Correction ("DOC") in violation of his constitutional rights. The City brings the instant motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff has failed to state any plausible claims of entitlement to relief. Def.'s Mem. L. Support. Mot. Dismiss, Doc. 11 ("Def.'s Mot. Dismiss"). For the reasons set forth below, Defendant's Motion is GRANTED.

 **I. Factual Background**

  The Court accepts the following allegations as true for purposes of this motion.[1]

---

[1] Some of the allegations appear in documents attached to the Complaint and in Plaintiff's subsequent letters to the Court. "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted) (collecting district court cases), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

Plaintiff alleges that, starting May 25, 2012 and continuing for fifteen months thereafter, he was placed in the SHU "for no apparent reason" while awaiting trial.[2]  Compl. 2–3, Doc. 2 ("Compl."). Plaintiff states that he was released from the SHU after his criminal trial. Compl. 9. Repeatedly throughout the Complaint and its attachments, Plaintiff refers to his period in the SHU as a "court ordered lockdown." *Id*. at 8–9, 11. However, in other instances, Plaintiff appears to contradict himself by stating that no court ever ordered his confinement in the SHU. *Id*. at 3, 4. He further claims that the judge assigned to his criminal case denied issuing such an order. *Id*. at 3.

Liberally construed, the Complaint alleges that Plaintiff suffered unconstitutional conditions of confinement and a violation of his due process rights in connection with being placed in the SHU. *Id*. at 5, 8. Plaintiff asserts that, during his time in the SHU, his mail was confiscated and his phone and visitation privileges were denied. *Id*. at 8. He contends that, as a result, he was unable to reach witnesses who he presumably wanted to testify on his behalf and was not "properly ready for trial." *Id*. at 8, 9. He was not denied access to his attorney, however.[3] *Id*. at 5. According to Plaintiff, he suffered mental anguish while in the SHU, namely "many psychological problems" which included nightmares and trouble sleeping. *Id*. at 3. Plaintiff indicates that he saw a psychologist who advised against taking medication for his condition. *Id.* Plaintiff is currently incarcerated pursuant to multiple convictions associated with the state's criminal case against him.[4]

---

[2] Given the numerous unnumbered attachments to the Complaint, the Court's citations to them refer to the page numbers reflected on ECF.

[3] In the Complaint, the Plaintiff states, "I contacted my attorney in the matter. [. . . ] He said it was a New York City Department of Corrections situation. It was out of his hands." Compl. 5.

[4] The Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Lookup System results for Plaintiff Sean Brown. *See Rosario v. New York City*, No. 12 CIV.

The suit was originally brought against John Doe and the New York City Department of Correction (DOC). *Id*. at 1.  On December 17, 2013, the Court dismissed Plaintiff's claims against the DOC because it is not an entity that can be sued.  Order 1–2, Dec. 17, 2013, Doc. 6.  The Court instructed the Clerk of the Court to replace the DOC with the City of New York.  *Id*. at 2.

On March 18, 2014, the City filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mot. Dismiss 1.  Plaintiff failed to file his opposition papers by the original deadline of April 4, 2014.  Order, April 23, 2014, Doc. 14.  Given Plaintiff's *pro se* status and his current incarceration, the Court *sua sponte* granted Plaintiff until May 30, 2014 to file his opposition.  *Id.*  In the same Order, the Court advised Plaintiff that if he failed to respond by the deadline, the motion to dismiss could be decided based solely on Defendant's papers.  *Id.*  On May 6, 2014, Plaintiff requested an extension of time due to his transfer to a new correctional facility and request for discovery of documents.  Pl. Ltr., April 30, 2014, Doc. 15.  The Court granted his request and ordered Plaintiff to file his opposition papers by July 21, 2014.  Order, May 9, 2014, Doc. 16.  During that time, Plaintiff submitted four letters to the Court.  Pl. Ltrs., Docs. 18–21.  The first letter advised the Court that Plaintiff was attempting to obtain the minutes from his trial to prove that Supreme Court Justice Bonnie Wittner stated that she never ordered his detention in the SHU.  Pl. Ltr. Doc. 18.  Plaintiff also forwarded the Court a copy of the Freedom of Information Act request that he filed in an attempt to retrieve the mail he alleges

---

4795 (PAE), 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013) (taking judicial notice of DOCC search results); *Williams v. City of New York*, No. 07 CIV. 3764 (RJS), 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008) (same).  According to DOCCS, Plaintiff was convicted of sex trafficking, promoting prostitution, and criminal contempt.  DOCCS Inmate Population Information Search ("N.Y. Inmate Lookup"), http://nysdoccslookup.doccs.ny.gov (last visited Oct. 14, 2014).

was confiscated while he was in the SHU. Pl. Ltr. Doc. 21. Plaintiff's letters otherwise simply reiterated the allegations contained in the Complaint and accused the DOC of covering up "a scandal," without further specification. Pl. Ltrs. Docs. 18–20. Since none of the subsequent letters appear intended to constitute opposition papers to Defendant's motion, the Court therefore considers the Defendant's motion unopposed.

## II. Discussion

### A. 12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for*

*Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). In order to survive a motion to dismiss, a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In addition to confining its consideration of a Rule 12(b)(6) motion to the facts stated in the complaint and in documents appended or incorporated by reference, a court may also take into account matters of which judicial notice can be taken. *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)); *see also* Fed. R. Evid. 201. In order for a court to take judicial notice of a

public document on a dismissal motion, the plaintiff must have relied on the terms and effect of the document in drafting the complaint.  *Chambers v. Time Warner*, *Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Accordingly, it is routine for courts to take judicial notice of court documents, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see, e.g., Kendall v. Cuomo,* No. 12 CIV. 3438 (ALC), 2013 WL 5425780, at *6 (S.D.N.Y. Sept. 27, 2013) (taking judicial notice of a valid court order Plaintiff claimed was "false, fake, and nonexistent").

Defendant asks the Court to take judicial notice of the May 25, 2012 order issued by Justice Wittner of the New York State Supreme Court, New York County ("May 25, 2012 Order"), which states in its relevant part:

> [I]t is hereby ORDERED that the Commissioner, New York City Department of Correction, or whosoever shall have supervision or control of the defendant . . . should otherwise prevent the defendant by any means necessary, including 24 hour lockdown, from making telephone calls except to the defendant's attorney[.] [. . .] This order shall remain in effect as long as the defendant is in the custody of the Department of Corrections [sic].

Def.'s Mot. Dismiss, Ex. A.  Although Plaintiff appears to contend that no such order exists, his Complaint states that he was told by DOC personnel that he was in the SHU "by the court" and repeatedly refers to his segregation as a "court-ordered lockdown."  Compl. 3, 8, 9, 11.  Given Plaintiff's reliance on the terms and effect of the May 25, 2012 Order, the Court may appropriately take judicial notice of it.

Finally, the Court notes that Plaintiff has failed to submit a memorandum in opposition to the motion. While a party must be given a reasonable opportunity to respond to an opponent's motion, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir. 2000). Failure to oppose a Rule 12(b)(6) motion is not in itself sufficient to justify dismissal of a complaint. *Id.* at 322.

### B. Constitutionality of Confinement

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)). Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.*

#### i. The Fact of Confinement

The Second Circuit has stated that whether a judge's orders are "correct or erroneous," they are a source of immunity for prison officers who do "nothing other than perform them." *Ravenscroft v. Casey*, 139 F.2d 776, 778 (2d Cir. 1944); *see also Young v. Canfield*, No. 11-CV-6007 (FPG), 2014 WL 3385186, at *7–8 (W.D.N.Y. July 9, 2014) (plaintiff could not maintain his § 1983 claim for excessive force against state medical staff carrying out a facially valid court order); *Miller v. Dir., Middletown State Hosp., Middletown, N. Y.*, 146 F. Supp. 674, 680 n.3

(S.D.N.Y. 1956) *aff'd*, 243 F.2d 527 (2d Cir. 1957) (state hospital officers confronted with a facially valid court order had "a duty to yield obedience to it"). Relying in part on Second Circuit authority, the Ninth Circuit subsequently observed that "the courts of appeals that have addressed whether prison officials are absolutely immune from § 1983 liability for enforcing facially valid court orders have uniformly concluded that they are." *Engebretson v. Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013) (listing, in addition to the Second Circuit, First, Third, Eighth, and Tenth Circuit case law affirming absolute liability for prison officials executing valid court orders). In reaching its decision, the Ninth Circuit reasoned that its outcome was in line with the common-law tradition of granting absolute immunity to those performing functions necessary to the judicial process and consistent with Supreme Court law. *Id*. at 1039–40. Furthermore, it explained that "absolute immunity is necessary to free prison officials from the fear of litigation" and "ensures the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them." *Id*. at 1040 (internal quotations and citations omitted).

Having taken judicial notice of the May 25, 2012 Order that authorized Plaintiff's confinement in the SHU, this Court concludes that the prison officials charged with executing the Order are entitled to absolute immunity. *See Ravenscroft*, 139 F.2d at 778. Plaintiff was not placed in the SHU "for no apparent reason," Compl. 3; his segregated confinement was pursuant to a court order that explicitly sanctioned a "24 hour lockdown" to limit his ability to communicate with anyone other than his attorney. Def.'s Mot. Dismiss, Ex. A. To the extent that the prison officials were complying with the Order, they cannot be held liable for simply doing their job by following a court's decree. Thus, Plaintiff's due process challenge can be dismissed on this basis alone.

8

Moreover, even in the absence of a facially valid court order, Plaintiff's § 1983 claims would still fail because they implicate the validity of his conviction. *See Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994). In *Heck,* the plaintiff brought suit under § 1983 claiming that the defendants "engaged in an 'unlawful, unreasonable, and arbitrary investigation'" which lead to his arrest; knowingly destroyed exculpatory evidence; and were responsible for the use of an "illegal" voice identification procedure at his trial. *Id.* at 479. The Supreme Court analogized the defendant's claims to the common-law cause of action for malicious prosecution and cited the lower courts' findings that his claims challenged the legality of his conviction. *Id*. at 484, 489. The Court further concluded that, in order to recover damages under § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a state prisoner must demonstrate that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486–487.

Plaintiff claims that, in conjunction with his confinement in the SHU, he was unable to reach witnesses and not "properly ready for trial." Compl. 8, 9. More specifically, the Complaint accuses the DOC of confiscating "important mail . . . needed for trial," including a letter authored by Plaintiff's alleged victim. Compl. 5, 9. Hence, Plaintiff asserts that "the judgment should be vacated." Compl. 9. If in fact Plaintiff is arguing that a ruling in his favor necessarily entails that his conviction should be overruled, he must demonstrate that said conviction was already invalidated. *Heck*, 512 U.S. at 487. The Complaint suggests nothing of the sort. Therefore, Plaintiff is barred by *Heck* from seeking monetary relief under § 1983 based on his alleged wrongful conviction. *See Antrobus v. City of New York*, No. 11 CIV. 2524 (RA),

9

2014 WL 1285648, at *3 (S.D.N.Y. Mar. 27, 2014) (prisoner's claims that interference with his mail caused him to be wrongfully convicted dismissed on the basis of *Heck*).

### ii. Conditions of Confinement

The Supreme Court has held that the Government may commit someone to pretrial detention to ensure his presence at trial, provided that the conditions and restrictions of detention do not amount to punishment or violate the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979). "Absent a showing of an expressed intent to punish," if the circumstances surrounding a pretrial detainee's confinement are "reasonably related to a legitimate nonpunitive governmental objective, it does not, without more, amount to 'punishment[.]" *Id.* at 520. Aside from determining "whether an alternative purpose to which [the pretrial restriction] may rationally be connected is assignable for it," a court must also establish "whether it appears excessive in relation to the alternative purpose assigned[.]" *Id.* at 538 (internal quotations and citations omitted). "[I]f a condition or restriction is arbitrary or purposeless, a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id*. at 520–21.

Plaintiff neither alleges punitive intent behind his placement in the SHU nor any facts that would support an inference of such an intent. From the City's perspective, Plaintiff's confinement in the SHU was motivated by a legitimate nonpunitive objective: enforcing a valid court order. *See* Def.'s Mot. Dismiss, Ex. A. To the extent Plaintiff's duration in the SHU might appear "excessive in relation to the alternative purpose assigned," *Bell*, 441 U.S. at 538, the May 25, 2012 Order itself authorized Plaintiff's lockdown for the duration of his confinement by the DOC. *Id*.

Plaintiff states that he suffered "cruel and unusual punishment for no apparent reason" in violation of his Eighth Amendment rights.  Compl. 5.  Since the violations allegedly occurred prior to conviction, the Eighth Amendment does not directly apply, because "as a pre-trial detainee [the plaintiff is] not being 'punished[.]'"  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir.2000)).  Rather, the application of the Due Process Clause of the Fourteenth Amendment is appropriate in this case.  *Id*.  Nevertheless, the analysis is identical to that of the Eighth Amendment.  *Id*. at 71–72; *see also Ortiz v. Dep't of Correction of City of New York*, No. 08 CIV. 2195 (RJS) (HBP), 2011 WL 2638137, at *4 (S.D.N.Y. Apr. 29, 2011) *report and recommendation adopted sub nom. Ortiz v. Hernandez*, No. 08 CIV. 2195 (RJS) (HBP), 2011 WL 2638140 (S.D.N.Y. July 5, 2011) ("[T]he Fourteenth Amendment provides substantially the same protection to pretrial detainees that the Eighth Amendment provides to sentenced prisoners.").  The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted," U.S. Const. amend. VIII, and "[t]hat rule, applicable to the states through the Fourteenth Amendment, . . . is violated by unnecessary and wanton inflictions of pain and suffering." *Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *11 (S.D.N.Y. Mar. 26, 2013) (internal citations omitted).  Prison officials are deemed to have violated the Eighth Amendment only when two conditions are satisfied:  (1) the alleged deprivation must objectively be "sufficiently serious," and (2) the alleged perpetrator must subjectively possess a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted).

An objective analysis of the seriousness of the conduct at issue requires an examination of the alleged unconstitutional conditions.  Although the Constitution does not mandate a comfortable prison setting, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), prisoners are entitled

to "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)).  Therefore, to establish the objective element of an Eighth Amendment violation, a prisoner "must prove that the conditions of his confinement violate contemporary standards of decency."  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Helling v. McKinney*, 509 U.S. 25, 35–36 (1993)).  More specifically, the inmate must demonstrate that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citing *Rhodes*, 452 U.S. at 347).

Plaintiff's Complaint is entirely void of details concerning the conditions of his confinement.  *See* Compl.  Although Plaintiff maintains that he suffered an emotional injury, he does not specify a particular aspect of his confinement that caused him to suffer emotional harm.  *Id.* at 3.  While "conditions that prevent sleep have been held to violate the Eighth Amendment," *Walker*, 717 F.3d at 126, Plaintiff simply alleges that he was "[u]nable to sleep in the dark" and suffered from nightmares at night while in the SHU.  Compl. 3.  Sleeping in the dark hardly suggests that there has been an objective interference with a basic human need.  In his May 16, 2014 letter, Plaintiff states that a corrections officer tried to "get him help" for his "mental anguish," but "the doctors kept refusing to help."  Ltr., May 16, 2014, Doc. 19.  Nonetheless, the Complaint admits that Plaintiff visited a psychologist, who apparently advised Plaintiff against taking medicine for his psychological symptoms because it would make him sick.  *Id*. In and of itself, the psychologist's advice does not conflict with basics standards of decency.   Nowhere else in the Complaint does Plaintiff claim that the conditions of his confinement, aside from the

fact that he was in lockdown, were sub-standard.  *See* Compl.  Thus, Plaintiff fails to assert that the conditions of his confinement were objectively unreasonable.

To satisfy the subjective element, which hinges upon the accused prison official's subjective intent, the plaintiff must allege "something more than mere negligence."  *Cuoco*, 222 F.3d at 106 (internal quotation marks omitted).  An injured prisoner can recover only if the injury was a product of the prison official's "purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk."  *Fischl v. Armitage*, 128 F.3d 50, 55 (2d. Cir. 1997) (quoting *Farmer*, 511 U.S. at 834).  An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Cuoco*, 222 F.3d at 107 (internal citations and quotation marks omitted).

To the extent Plaintiff expressly ascribes blame, he refers to the alleged DOC conduct as "negligent."  Ltr., May 19, 2014, ECF No. 20.  Plaintiff does not allege any specific conduct by prison officers, let alone acts that could be construed as reckless or purposeful, other than he was kept in the SHU.  *See* Compl.  However, being confined to the SHU, without more, does not offend the Constitution.  "The conditions of special housing units do not per se constitute cruel and unusual punishment in violation of the Eighth Amendment," *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (citing *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985)), and therefore do not violate the Fourteenth Amendment under the parallel analysis.  *See also Branch v. Goord*, No. 05 CIV 6495 (WHP) (KNF), 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (Eighth Amendment claim dismissed where Plaintiff failed to "explicitly allege[] that his SHU

13

confinement conditions were anything out of the ordinary"). Thus, the Complaint does not put forth sufficient facts to assert a claim of unconstitutional conditions of confinement.

To be sure, under different circumstances Plaintiff's substantial confinement in the SHU, which exceeded 450 days, would likely have triggered further factual inquiry by this Court. Compl. 3, 11. Generally, in cases involving convicted detainees claiming due process violations, the Court considers: (1) whether the plaintiff had a protected liberty interest; and (2) whether the deprivation of that liberty interest occurred without due process. *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (quoting *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997)). Certainly, "a confinement longer than an intermediate one, and under 'normal SHU conditions,' is 'a sufficient departure from the ordinary incidents of prison life to require procedural due process protections[.]'" *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (quoting *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)). The Second Circuit has required a "detailed factual record," unless the period of time spent in the SHU was under thirty days and there is no indication that the prisoner experienced unusual SHU conditions. *Davis v. Barrett*, 576 F.3d 129, 135 (2d Cir. 2009) (quoting *Palmer*, 364 F.3d at 65–66). It has further characterized segregated sentences of 125 to 288 days as long enough to require a "fact intensive inquiry." *Palmer*, 364 F.3d at 65 (citing *Sims v. Artuz*, 230 F.3d 14, 22–23 (2d Cir. 2000)).

However, unlike the other cases in which the duration of a prisoner's confinement in the SHU gave rise to a claim, *see J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (administrative detention for 188 days sufficient to allege Fifth Amendment claim); *Tellier*, 280 F.3d at 80, 82 (same, further noting that a warden's discretion to place a prisoner in the SHU for 514 days is "not boundless and continuing"), Plaintiff's 24 hour lockdown was non-punitive and authorized by a court order. The May 25, 2012 Order was expressly intended to remain in effect "as long as

14

the defendant is in the custody of the Department of Corrections." Def.'s Mot. Dismiss, Ex. A. Indeed, that appears to be the case. Plaintiff's Complaint affirms that he was released from lockdown after his trial. Compl. 9. All of his allegations are directed at the DOC and nothing in the Complaint suggests that he was in the SHU while outside of DOC's custody. Thus, while Plaintiff's duration in the SHU is certainly considerable, his Complaint is misdirected to the extent it faults DOC officials for the amount of time he spent there.[5]

### C. Failure to Allege Personal Involvement

It is the well settled law of this Circuit that a claim brought under § 1983 must allege the personal involvement of each defendant. *See, e.g., Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (listing Second Circuit cases). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *2 (S.D.N.Y. Apr. 14, 2004)

---

[5] Even in the absence of a court order, it is not readily apparent that Defendant was denied due process protections. A pretrial detainee confined for non-punitive, administrative purposes is entitled to "the minimal procedures outlined in *Hewitt*[.]" *Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir. 2009) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001)). Under *Hewitt*, an inmate "must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). The right to be heard is fulfilled when the inmate in administrative detention is afforded an opportunity to write to the responsible prison official concerning the propriety of his confinement, even if the official does not respond. *Lowrance v. Achtyl*, 20 F.3d 529, 536 (2d Cir. 1994).

Although nothing in the Complaint suggests that Plaintiff lacked notice, he does assert that he was held in the SHU without a hearing. Compl. 3. However, the Complaint also acknowledges that Plaintiff filed a grievance in the facility where his claim arose. Compl. 4. The response from the DOC, which Plaintiff "kept appealing," indicated that he was in the SHU pursuant to a court order. *Id*.

(internal citations omitted).

Although Plaintiff named "John Doe" as a defendant in the caption of the Complaint, he never identifies who John Doe might be or otherwise mentions him again.  Compl. 2.  In fact, the Complaint does not contain a single reference to any particular individual whose acts could possibly be attributable to the unnamed Defendant.  *See* Compl.  Therefore, dismissal as to Defendant John Doe is appropriate.  *See Ferrer v. Superintendent Orange Cnty. Jail*, No. 08 CIV. 6527 (SCR) (PED), 2010 WL 306977, at *4 (S.D.N.Y. Jan. 26, 2010) (complaint that does not reference any "John Doe" fails to state a claim for relief that is "plausible on its face" as to those unidentifiable defendants); *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 435 (S.D.N.Y. 2004) (dismissal warranted as to defendant who was not mentioned in complaint).

### D. Municipal Liability ("*Monell* Claim")

A municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  A § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at 690–91.  Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *see also Connick v. Thompson*, U.S. 131 S. Ct. 1350, 1360 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692)).

The Second Circuit has established a two prong test for § 1983 claims brought against a municipality. First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'" *Johnson v. City of New York*, No. 06 CV 09426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id.* Suits brought against state officials in their official capacity are treated as suits against the State and "the entity's 'policy or custom' must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials, or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases).

Plaintiff has failed to assert any of the requisite bases to satisfy the first prong of a *Monell* claim under the Second Circuit's municipal liability test. First of all, as previously established, Plaintiff is unable to assert that he suffered a violation of his constitutional rights. *See supra* Part

II. B.  Even if Plaintiff had successfully asserted a constitutional claim, his Complaint never alleges that a single aspect of his confinement in the SHU was pursuant to a City policy or a custom that "is so widespread as to have the force of law."  *See Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404.  *See* Compl.  Plaintiff's subsequent letters to the Court reference a "scandal" and "so many violations it is an eye sore."  Pl. Ltrs., Docs. 18–21.  However, he does not indicate that the scope of the alleged violations expands beyond his case.  In many of the same letters, Plaintiff accuses the DOC of failing to adhere to its own protocol.  Pl. Ltrs., Docs. 19, 20.  Furthermore, the Complaint acknowledges in various sections that Plaintiff's segregated confinement was court-ordered.  *See supra* Part II. B. i.  As opposed to being pursuant to a DOC practice or policy, his placement in the SHU was determined by a judge.  Nothing in the Complaint goes beyond describing Plaintiff's alleged experience.  *See Johnson*, 2011 WL 666161 at *3-4 (dismissing *Monell* claims where Plaintiff failed to "allege sufficient facts about his or similar others' experiences").  Therefore, Plaintiff's claims against the City and John Doe, to the extent he is being sued in his official capacity, are dismissed.

### E. Limitations of Damages Under the Prison Litigation Reform Act

The Prison Litigation Reform Act (PLRA) indicates that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  A "plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002).  Section 1997e(e) only limits the *recovery* for emotional and mental injury in the absence of physical injuries; it does not bar the Plaintiff from bringing the lawsuit or from obtaining nominal or punitive damages, or injunctive and

18

declaratory relief. *Id.* at 418.  Nonetheless, a Court may dismiss a complaint that seeks compensatory damages "solely for an emotional injury without any claim of physical injury." *Id*. at 419.

The Plaintiff fails to plausibly allege any type of physical injury. *See* Compl.  The only harm that Plaintiff claims he sustained—ranging from having nightmares, talking to himself, and an inability to sleep in the dark—cannot plausibly be construed as amounting to physical harm. *See Rosado v. Herard*, No. 12 CIV. 8943 (PGG) (FM), 2014 WL 1303513, at *12-13 (S.D.N.Y. Mar. 25, 2014) (complaint alleging psychological episodes of mental anguish – including insomnia – dismissed under § 1997e(e)).  The Complaint specifically seeks $200,000 in damages to "compensate" the Plaintiff "for all of the mental anguish" he suffered. *Id*. at 5.  Although Section 1997e(e) does not bar other forms of relief,  Plaintiff's claim is dismissed insofar as he requests compensatory damages for mental or emotional harm because he failed to allege physical injury. *See Rosado*, 2014 WL 1303513, at *12–13; *Howard v. City of New York*, No. 11 CIV. 5899 (CM), 2012 WL 5816976, at *2 (S.D.N.Y. Nov. 14, 2012) (complaint purely alleging emotional distress dismissed under Section 1997e(e)).

### F.  Stay of Discovery Request

The Defendant also asks the Court to stay discovery pending the disposition of this Rule 12(b)(6) motion.  Def.'s Mot. Dismiss 12.  Given that the motion to dismiss is granted, Defendant's request to stay discovery is denied as moot. *See McManamon v. Shinseki*, No. 11 CIV. 7610 (PAE), 2013 WL 3466863, at *14 (S.D.N.Y. July 10, 2013), *appeal dismisse*d (Dec. 30, 2013) (motion to stay discovery denied as moot after motion to dismiss granted); *Schoolcraft v. City of New York,* No. 10 CIV. 6005 (RWS), 2011 WL 1758635, at *5 (S.D.N.Y. May 6, 2011) (same).

### III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 10, to mail a copy of this Opinion and Order to Plaintiff, and to close the case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:   October 28, 2014
         New York, New York

_____
Edgardo Ramos, U.S.D.J.